# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LEI Packaging, LLC,

      Plaintiff,

  v.

Emery Silfurtun Inc., Samey ehf, and
Hedinn Ltd.,

      Defendants.

_____

Emery Silfurtun Inc.,

      Counterclaim Plaintiff,

  v.

LEI Packaging, LLC,

      Counterclaim Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-2446 ADM/BRT

_____

William Z. Pentelovitch, Esq., Maslon LLP, Minneapolis, MN, on behalf of Plaintiff and
Counterclaim Defendant.

Matthew A. Lee, Esq., Quinn Emanuel Urquhart & Sullivan, New York, NY, and Randi J.
Winter, Esq., Felhaber Larson, Minneapolis, MN, on behalf of Defendants Samey ehf and
Hedinn Ltd.

_____

## I.  INTRODUCTION

On October 15, 2015, the undersigned United States District Judge heard oral argument

on Defendants Samey ehf ("Samey") and Hedinn Ltd.'s ("Hedinn") (collectively, the "Icelandic

Defendants") Motion to Dismiss [Docket No. 34], and Plaintiff LEI Packaging, LLC's ("LEI")

Motion to Compel Arbitration [Docket No. 41].  For the reasons set forth below, both LEI's

motion and Samey and Hedinn's motion are denied.

## II. BACKGROUND

On January 22, 2014, LEI, a Minnesota company, and Emery Silfurtun Inc. ("Emery"), a Canadian company, contracted for the purchase and installation of the Emery Rotary Quattro TP (Thermo Press) Pulp Moulding Machine (the "Machine"), a machine that produces egg cartons. Am. Compl. [Docket No. 30] ¶ 14; Ex. 3 (the "Machine Agreement").  The Machine Agreement provides that all disputes shall be resolved by arbitration:

> This Agreement and any disputes pertaining hereto shall be settled by arbitration and governed and construed in accordance with the laws of the State of Minnesota and the laws of USA applicable thereto.  Any disputes pertaining to this Agreement shall be heard in Chamber of Commerce, New York City, NY. Each party hereto specifically consents to venue in Chamber of Commerce, New York City, NY.  Each party hereto agrees that final judgement rendered against it in any action or proceeding relating in any way to this Agreement shall be conclusive and may be enforced, to the extent permitted by applicable law, in any other jurisdiction within or outside of Canada by suit on the judgment, a certified copy of which judgment shall be conclusive evidence thereof, or by such other means provided by applicable law.

Machine Agreement art. 6009.  LEI and Emery are the only signatories to the Machine Agreement.

Designing, manufacturing, and installing the Machine took months to complete and work was performed in Minnesota and abroad.  To assist in carrying out its duties under the Machine Agreement, Emery exercised its contractual right to subcontract, delegating portions of the design, manufacture, and installation of the Machine to Samey and Hedinn, two Icelandic companies that are engaged in, respectively, electrical engineering and mechanical engineering. Am. Compl. ¶¶ 9, 10, 17; Machine Agreement art. 6003.

Samey worked with Emery and LEI on the Machine's electrical communication systems.

Id. ¶ 18.  Samey Machine Engineer Kristjan Ármannsson ("Ármannsson") was named as the

"Project Manager."  Id. ¶ 19.  As part of his duties, Ármannsson attended meetings with LEI in

Minnesota and drafted, distributed and regularly updated a "Project Plan[n]er."  Johnson Decl.

[Docket No. 45] Ex. E.  The Project Planner, sent directly to LEI's CEO, established a schedule

for certain production and installation steps and designated who would perform them.  Id. Am.

Compl. ¶¶ 20–21.  Samey was responsible for four tasks and Hedinn for three.[1]  Id.  In addition

to Ármannsson, three other Samey employees traveled from Iceland to Minnesota for extended

periods of time to assist in the installation and maintenance of the Machine on behalf of Samey.

Am. Compl. ¶ 26.  Other agents and representatives of Samey performed work from Iceland on

the Machine's electrical controls at Emery and LEI's request.  Id. ¶ 27.

Hedinn worked with Emery and LEI on different components of the Machine, including

the stock and water handling system, rotor, dryer, and the hot press system.  Id. ¶ 28.  In Emery's

November 2013 presentation to LEI, Hedinn employee Gunnlauger Skulason ("Skulason") was

listed as part of the Emery "Team."  Id. ¶ 29.  This presentation occurred prior to the Machine

Agreement's execution and further identified Hedinn's 65,000 square foot Icelandic facility in a

slide entitled "Available Resources."  Id.  After the Machine Agreement was signed, Skulason

spent considerable time in Minnesota installing the Machine and frequently used an Emery email

address in his regular communications with LEI about the Machine.  Id. ¶¶ 30–31.

The Machine Agreement obligated LEI to produce a Machine that was capable of making

---

[1] Samey was solely responsible for "Ordering components and material," "Manufacture electrical and controls," and "Electrical assembly," and was jointly responsible with Hedinn for "Packing machinery."  Johnson Decl. Ex. E.  Hedinn was solely responsible for "Manufacture of machinery" and "Mechanical assembly."  Id.

7,200 egg trays or cartons per hour.  Machine Agreement 1.  Performance issues arose sometime after the Machine was installed.  In an effort to resolve LEI's concerns, LEI and Emery entered into a "Modification on LEI Machine" Agreement in March, 2015.  Am. Compl. Ex. 2 Ex. C ("Modification Agreement").  The Modification Agreement identifies concerns about specific parts of the Machine and names two individuals—Skulason being one—who will supervise the project, and establishes a schedule for when specific issues will be addressed and completed.  Id. Again, only LEI and Emery are signatories to the Modification Agreement.

The Modification Agreement failed to resolve the Machine's performance issues to LEI's satisfaction.  On April 20, 2015, LEI sued Emery and the Icelandic Defendants in Minnesota state court in Chisago County.  Compl. [Docket No. 1-1].  LEI's Complaint sought declaratory judgment that the Machine Agreement's arbitration provision was enforceable and that Emery was required to arbitrate in Minnesota.  Id. ¶ 38.  Emery removed to Federal District Court and on August 21, 2015, LEI and Emery entered a Stipulation [Docket No. 32] to arbitrate their dispute and stay these proceedings pending the outcome of arbitration.  The stipulation expressly provided that the stay was between LEI and Emery only; LEI's claims against the Icelandic Defendants were unaffected by the stipulation.

Also on August 21, 2015, the Icelandic Defendants moved to dismiss, arguing that there is no jurisdiction to compel them to arbitrate because they are not signatories to the Machine Agreement.  In the alternative, the Icelandic Defendants argue that the action between LEI and the Icelandic Defendants should be stayed pending the resolution of the arbitration proceeding between LEI and Emery.

On September 3, 2015, LEI moved to compel the Icelandic Defendants to arbitrate.  LEI

4

argues that, even though the Icelandic Defendants are not signatories to the Machine Agreement,

they can nevertheless be bound to the Machine Agreement's arbitration clause under principles

of agency and estoppel.[2]

## III.  DISCUSSION

### A.  Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to

dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P.

12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in

the light most favorable to the nonmoving party, and the facts alleged in the complaint must be

taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825

F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims

must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

A pleading must contain "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw a reasonable inference that

the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Determining whether a complaint states a plausible claim for relief is "a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense."  Id.

"But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to

---

[2] LEI also claims the Icelandic Defendants can be compelled to arbitrate based on
assumption.  LEI, however, provides no argument or authority for its assumption theory.  Thus,
only agency and estoppel theories are discussed.

relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The Amended Complaint seeks an order compelling the Icelandic Defendants to arbitrate by enforcing the terms of the Machine Agreement.  The Icelandic Defendants argue dismissal of LEI's arbitration claim is appropriate because the Icelandic Defendants are not signatories to the Machine Agreement and thus cannot be bound by its terms.  In response, LEI contends that the Icelandic Defendants' lack of signature on the Machine Agreement is not dispositive of its motion to compel arbitration because the conduct of Emery and the Icelandic Defendants satisfies one of the six recognized exceptions allowing nonsignatories to be bound to contractual arbitration provisions.  Adjudication of the Icelandic Defendants' motion to dismiss necessarily hinges on the merits of LEI's motion to compel arbitration.

**B.  Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs arbitration agreements relating to transactions involving interstate commerce.[3]  The Act provides:

> A written provision . . . or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA establishes a "federal policy favoring arbitration," which requires courts to "rigorously enforce agreements to arbitrate."  Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (quotations omitted).  "Generally, there is a presumption of

---

[3] The Icelandic Defendants, although noting that the FAA's international applicability is an open question, do not dispute the FAA's application for purposes of these motions.

arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Telectronics Pacing Sys., Inc. v. Guidant Corp., 143 F.3d 428, 433 (8th Cir. 1998) (quotation omitted) (alteration in original).

### 1. Waiver

In resisting arbitration, the Icelandic Defendants first argue LEI has waived its right to compel the Icelandic Defendants to arbitrate. The Icelandic Defendants argue that LEI's original Complaint names Samey and Hedinn as defendants but only asserts declaratory judgment ordering arbitration against Emery, and not against Samey or Hedinn. LEI responds that its right to compel arbitration against the Icelandic Defendants has not been waived. In support, LEI contends that filing the lawsuit evinces its intention to pursue arbitration. LEI further contends that waiver is inappropriate because the Icelandic Defendants have not been prejudiced.

Both Minnesota and federal case law define "waiver" as the intentional relinquishment of a known right. Portfolio Mgmt. Grp., LLC v. Biatch Fund I, LLC, No. 09-3193, 2010 WL 728074, at *4 (D. Minn. Jan. 4, 2010). A party will be found to have waived its right to arbitrate when that party "(1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993) (citing Stifel, Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991)). "Prejudice may result from lost evidence, duplication of efforts, use of discovery methods unavailable in arbitration, or litigation of substantial issues going to merits." Stifel, 924 F.2d at 159. In weighing the three factors, any doubts concerning the allegation of waiver are to be resolved in favor of arbitration. Id. at 158.

The Icelandic Defendants have not been prejudiced by LEI's acts.  This lawsuit is still in an early stage.  None of LEI's claims have been litigated beyond pleading.  That the Icelandic Defendants were forced to withdraw an early motion to dismiss when LEI filed an Amended Complaint falls short of constituting prejudice sufficient to extinguish LEI's contractual right to arbitration.  See Docket Nos. 18, 33.

### 2.  Merits

The Icelandic Defendants next argue that LEI cannot compel the Icelandic Defendants to arbitrate because they are not signatories to the Machine Agreement.  The parties agree that before a party can be compelled to arbitrate, two questions must be answered in the affirmative: 1) whether a valid agreement to arbitrate exists between the parties; and 2) whether the specific dispute falls within the substantive scope of that agreement.  Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994).  The Icelandic Defendants contend that LEI cannot satisfy the first prong, a showing of a valid agreement between them and LEI.

"As arbitration is a matter of contract, 'a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'"  United States ex rel. Lighting & Power Servs. v. Interface Constr. Corp., 553 F.3d 1150, 1158 (8th Cir. 2009) (quoting AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986)).  However, "a willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories described in Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)."  Reid v. Doe Run Res. Corp., 701 F.3d 840, 846 (8th Cir. 2012) (quoting CD Partners, LLC v. Grizzle, 424 F.3d 795, 799 (8th Cir. 2005)).  "Those five theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."  Reid,

701 F.3d at 846.  LEI asserts that agency and / or estoppel apply here.

### a. Agency

LEI first argues that the Icelandic Defendants were agents of Emery in the performance of the Machine Agreement.  According to LEI, the Icelandic Defendants had apparent authority to act on Emery's behalf and were vital to discharging its obligations under the Machine Agreement.  Thus, it is argued that the Icelandic Defendants can be compelled to arbitrate.  In opposition, the Icelandic Defendants respond that LEI's agency theory relies on a misunderstanding of the application of that theory.  While agency is a recognized method to compel a nonsignatory to arbitrate, the facts of this case improperly extend the exception into territory that has been expressly rejected by other courts.

In addressing the substance of LEI's argument, two facts are crucial.  First, LEI as a willing signatory, is trying to compel the Icelandic Defendants, as unwilling nonsignatories, to arbitrate.  This is distinct from situations where a willing nonsignatory is attempting to compel an unwilling signatory to arbitrate.  See Nitro Distrib., Inc. v. Alticor, Inc., 453 F.3d 995, 999 (8th Cir. 2006) (noting that the distinction is important); Thompson-CSF, 64 F.3d at 779 (same); Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2d Cir. 2003) ("That first distinction, which Optibase contends is irrelevant, is decisive; it matters whether the party resisting arbitration is a signatory or not.").[4]

---

[4] Numerous cases address the question of when a willing nonsignatory can compel a non-willing signatory to arbitrate.  See e.g., CD Partners, 424 F.3d at 799 ("This is a case where a nonsignatory with a close relationship to a signatory wants the other signatory to arbitrate a claim."); PRM Energy Sys., Inc. v. Primenergy, L.L.C., 592 F.3d 830, 832 (affirming district court in permitting nonsignatory to enforce arbitration provision against a signatory).  A signatory hoping to bind a nonsignatory has a higher burden than would a nonsignatory hoping to bind a signatory.  CD Partners, 424 F.3d at 798–800.

The second crucial fact, and of more importance, is that LEI, as a signatory to the Machine Agreement, is attempting to bind the Icelandic Defendants, as agents, to the Machine Agreement through the signature of Emery, the principal.[5]  In <u>Walker v. Collyer</u>, after surveying the relevant federal authority, the Massachusetts Court of Appeals concluded that "the agency exception is limited to circumstances of agents binding principals to arbitrate rather than vice versa."  9 N.E. 3d 854, 864 (Mass. App. Ct. 2014).  The only Eighth Circuit decision that would draw <u>Walker</u>'s conclusion into question is <u>Iowa Premium Beef, LLC v. Global Capital Life, LLC</u>, No. 12-39, 2013 WL 3364364, at *2 (N.D. Iowa July 3, 2013).  In compelling the nonsignatory agent to arbitrate, <u>Iowa Premium Beef</u> relied in part on <u>Donaldson Co. v. Burroughs Diesel, Inc.</u>, 581 F.3d 726, 732 (8th Cir. 2009), for the proposition that the obligation to arbitrate may be extended to nonsignatory agents based on contract and agency theories.  <u>Iowa Beef</u>, 2013 WL 3364364, at *2.  The reliance on <u>Donaldson</u>, however, is muted because the issue in <u>Donaldson</u> was whether a nonsignatory agent could enforce the arbitration provision of an agreement, rather than a signatory trying to enforce the provision against a nonsignatory. <u>Donaldson</u>, 581 F.3d at 732.  As previously noted, this distinction is important.  <u>Nitro Distrib.</u>, 453 F.3d at 999.

LEI nevertheless maintains that Eighth Circuit authority permits binding a nonsignatory agent to an arbitration provision the agent's principal signed.  In essence, LEI's agency theory relies exclusively on <u>Nitro Distributing</u>'s statement that "[a]n agent is subject to the same contractual provisions, including arbitration contracts, to which the principal is bound."  453

---

[5] The parties dispute whether or not the Icelandic Defendants are indeed agents of Emery. Because the instant motions are resolved without resolving this issue, no determination is made as to the legal relationship between Emery and the Icelandic Defendants.

F.3d at 999 (citing Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1121

(3d Cir. 1993)).[6]  While somewhat ambiguous, Nitro Distributing cannot stand for the sweeping

propositoin that an agent is subject to every contract term its principal enters into with third

parties.[7]  This is contrary to the traditional tenet of agency law, that agents, if acting within their

scope of authority, maintain the ability to bind their principals to contracts they enter into with

third parties.  See New Millennium Consulting, Inc. v. United Healthcare Servs., Inc., 695 F.3d

854, 857 (8th Cir. 2012) (citing Restatement (Third) of Agency § 3.01 (2006)).  A. more

reasoned interpretation of the statement in Nitro Distributing is that an agent can be subject to

the same contractual terms it enters into on behalf of its principal. This is consistent with the

result in Wojtalewicz v. Pioneer Hi-Bred International, Inc., 959 F. Supp. 2d 1215 (D. Neb.

2013).  In that case, the principals delegated the authority to operate their farming businesses to

their agents.  Id. at 1223.  Under their grant of authority, the agents purchased seed pursuant to

contracts which included an arbitration provision.  Id. at 1223–4.  Although the principals did

not receive or execute the contracts nor purchase any of the seed directly, the court held that the

principals were nevertheless compelled to arbitrate under the agency theory articulated by the

---

[6] Nitro Distributing's citation to Pritzker is notable because in that case willing nonsignatories were trying to compel arbitration against unwilling signatories.  This was but one reason why Pritzker did not convince the Second Circuit that a nonwilling nonsignatory could not be compelled to arbitrate based on an agency theory.  See Merrill Lynch, 337 F.3d at 130–31 (affirming denial of signatory third party's motion to compel arbitration of nonsignatory agent on an agency theory).

[7] Support for this statement traces back to "ordinary common law contract and agency principles."  Barrowclough v. Kidder, Peabody & Co., Inc., 752 F.2d 923, 938 (3d Cir. 1985) overruled by Pritzker, 7 F.3d at 1111 (citing cases).  The Court has been unable to locate any contract or agency principles that permit holding a nonsignatory agent to the contracts its principal enters into with third parties, the result LEI argues for here.

Eighth Circuit.  Id.  Other Circuits have expressly concluded that the agency exception applies if the signatory signed the arbitration provision as the nonsignatory's agent.  World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc., 517 F.3d 1240, 1247 (11th Cir. 2008).[8]  Notably, in the district court decision on appeal in Nitro Distributing, the party seeking to compel arbitration alleges the same factual scenario in Wojtalewicz, that arbitration was proper because the person who signed the contract was acting as an agent for the nonsignatory on behalf of the principal signatory.  Nitro Distrib., Inc. v. Alticor, Inc., No. 03-3290, 2005 WL 6936246, at *7 (W.D. Mo. Sept. 16, 2005).  The district court, however, concluded that the purported agent lacked actual or apparent authority to bind the principal to the arbitration provision.  Id.

Returning to the case at hand, the Eighth Circuit has not endorsed the result that LEI seeks here.  On the facts of this case, the Icelandic Defendants cannot be compelled to arbitrate under a contract signed by LEI and Emery on an agency theory.

### b.  Estoppel

LEI next argues that the Icelandic Defendants can be compelled to arbitrate on estoppel principles.  The estoppel theory is that because the Icelandic Defendants directly benefitted from the contract between LEI and Emery, they can be bound to that contract's arbitration provision.  See Reid, 701 F.3d at 846 ("Nonsignatories can be bound to an arbitration agreement when they directly benefit from the agreement.").

In Reid, the Eighth Circuit adopted the Fifth Circuit's "direct benefits estoppel"

---

[8] In explaining Nitro Distributing's holding, the Eleventh Circuit stated that the denial of the motion to compel arbitration was affirmed "because the petitioner failed to demonstrate that the signatory had actual or apparent authority to act on behalf of the non-signatory."  World Rentals, 517 F.3d at 1248.

requirements for when a nonsignatory can be bound to an arbitration provision under this theory:

"(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to

enforce the terms of that contract or asserting claims that must be determined by reference to that

contract." Id. (quoting Noble Drilling Servs. v. Certex USA, Inc., 620 F.3d 469, 473 (5th Cir.

2010).  Neither of these situations apply here.

As to the first, the Icelandic Defendants did not seek nor obtain direct benefits of the

Machine Agreement.  The compensation the Icelandic Defendants received for performing its

duties was paid by Emery, not LEI.  Johnson Decl. Ex. P.  This is not evidence of a direct benefit

and, as explained by the Eighth Circuit, the cases finding a direct benefit have  "a much closer

nexus between the nonsignatory and the agreement with the arbitration clause."  Reid., 701 F.3d

at 848 (citing Blaustein v. Huete, 449 Fed. Appx. 347, 350 (5th Cir. 2011); Graves v. BP Am.,

Inc., 568 F.3d 221, 223–224 (5th Cir. 2009); Am. Bureau of Shipping v. Tencara Shipyard

S.P.A., 170 F.3d 349, 353 (2d Cir. 1999)).

With respect to the second mode of direct benefits estoppel, the Icelandic Defendants

have not asserted any claims that require reference to the Machine Agreement.  The Icelandic

Defendants are merely defendants in this action and, unlike Emery, they have not asserted any

counterclaims or invoked any defenses that rest on provisions of the Machine Agreement.  This

makes LEI's citation to M.A. Mortenson Co. v. Gem Mechanical Services, Inc., inapposite.  No.

06-2182, 2006 WL 1997367 (D. Minn. July 14, 2006).  In that case, a nonsignatory defendant

was ordered to arbitrate under an estoppel theory because the defendant sued "for breach of the

same subcontracts containing the arbitration clause it now seeks to avoid," and further admitted

that it "took over" the contract at issue.  Id. at *3–4.  No such allegations are asserted against the

Icelandic Defendants here.  Therefore, they cannot be compelled to arbitrate based on an estoppel theory.

### 3. Conclusion

The Eighth Circuit has recognized that "arbitration is a matter of consent, not of coercion." Keymer v. Mgmt. Recruiters Intern., Inc., 169 F.3d 501, 504 (1999). Nitro Distributing, a case heavily relied upon by LEI, recognizes that "[a]rbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the courts have no authority to mandate that they do so."  453 F.3d at 999 (quoting Thompson-CSF, 64 F.3d at 779).  While in limited circumstances nonsignatories to arbitration provisions can be compelled to arbitrate, such circumstances are not present here.  The Icelandic Defendants cannot be compelled to arbitrate based on an arbitration provision in the Machine Agreement, a contract signed between LEI and Emery.[9]

## C. Stay

LEI argues that if its effort to compel the Icelandic Defendants to arbitrate fails, it should be permitted to conduct discovery related to arbitration concurrent to proceeding in arbitration against Emery.  The Icelandic Defendants argue that a stay of these proceedings pending the resolution of the arbitration between LEI and Emery is appropriate.

"It is well-established that district courts have the power to stay litigation between a non-party and a party to an arbitration agreement 'when the third party litigation involves common

---

[9] As expressed at the hearing, the Court agrees with LEI that the most efficient way to completely address all the issues is for all parties, including the Icelandic Defendants, to pursue and defend all claims in one forum.  Efficiency, however, is not always a legally recognized rationale for compelling a nonsignatory to arbitration.

questions of fact that are within the scope of the arbitration agreement.'" <u>Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. No. 36</u>, 459 F. Supp. 2d 866, 873 (D. N.D. 2006) (quoting <u>Contracting NW, Inc. v. City of Fredericksburg</u>, 713 F.3d 382, 387 (8th Cir. 1983)).

Given the relationship between Emery and the Icelandic Defendants and the record demonstrating that the Icelandic Defendants assisted Emery in designing, manufacturing, and installing the Machine, it is reasonable to assume that formal agreements exist between Emery and each of the Icelandic Defendants. If any such agreements exist, they are not in the record. Since contracts between subcontractors, such as the Icelandic Defendants can be characterized, and its general contractor, which Emery can be characterized as, often include flow through clauses, the Icelandic Defendants may by contractually required to arbitrate. LEI will be permitted to engage in very limited discovery to determine if any formal obligation requires Samey and Hedinn to arbitrate. Magistrate Judge Thorson shall determine the scope of LEI's discovery and the Court will entertain a revised motion to compel arbitration after such discovery has concluded.

### IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Defendants Samey ehf and Hedinn Ltd.'s Motion to Dismiss [Docket No. 34], is

   **DENIED**; and

2.      Plaintiff LEI Packaging, LLC's Motion to Compel [Docket No. 41], is **DENIED.**

BY THE COURT:


   _s/Ann D. Montgomery_
   ANN D. MONTGOMERY
   U.S. DISTRICT JUDGE

Dated:  December 22, 2015.

16