# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

LEI Packaging, LLC,

        Plaintiff,

    v.

Emery Silfurtun Inc., Samey ehf, and
Hedinn Ltd.,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-2446 ADM/BRT

---

Sarah A. Horstmann, Esq., Maslon LLP, Minneapolis, MN, on behalf of Plaintiff.

Matthew A. Lee, Esq., Quinn Emanuel Urquhart & Sullivan, New York, NY, and Randi J.
Winter, Esq., Felhaber Larson, Minneapolis, MN, on behalf of Defendants Samey ehf and
Hedinn Ltd.

---

# I.  INTRODUCTION

On June 8, 2016, the undersigned United States District Judge heard oral argument on

Defendants Samey ehf ("Samey") and Hedinn Ltd.'s ("Hedinn") (collectively, the "Icelandic

Defendants") Motion to Dismiss [Docket No. 79].  Plaintiff LEI Packaging, LLC ("LEI")

opposes the motion.  For the reasons set forth below, the Icelandic Defendants' motion is denied.

# II.  BACKGROUND

## A.  Parties, the Machine, and the Machine Agreement

This dispute concerns contracts for the purchase of a Rotary Quattro TO Pulp Moulding

Machine (the "Machine"), which was designed to be capable of producing 7,200 egg cartons per

hour.  On January 22, 2014, LEI, a Minnesota manufacturer and seller of molded pulp packaging

products, including egg cartons and trays, agreed to pay Emery Silfurtun Inc. ("Emery")

$4,509,858 to design, construct, and install the Machine.  Second Am. Compl. [Docket No. 66]

¶¶ 1, 7, Ex. A ("Machine Agreement").  Emery, a Canadian company, and LEI are the only signatories to the Machine Agreement.

Emery in turn contracted with the Icelandic Defendants to assist in carrying out its obligations under the Machine Agreement.  Id. ¶¶ 19, 27; Lee Decl. [Docket No. 82] Ex. 1 ("Samey Contract") § 1.0, Ex. 2 ("Hedinn Contract") § 1.0 (collectively, the "Icelandic Contracts").  The Second Amended Complaint alleges that Samey agreed to provide project management and testing services, assume responsibility over the Machine's electrical and automation parts, and source and order several major Machine components.  Second Am. Compl. ¶ 21.  Hedinn's role was to build steel constructions and to provide steel materials for the Machine's construction.  Id. ¶ 29.

In January 2014, Emery and the Icelandic Defendants started designing and manufacturing the Machine.  Id. ¶ 35.  During 2014, the Icelandic Defendants communicated with LEI employees in, and traveled to, Minnesota.  Id. ¶ 39.  In September 2014, representatives of Emery and the Icelandic Defendants traveled to Minnesota and began installing the Machine at LEI's facility in Chisago City, Minnesota.  Id. ¶ 40.  Installation of the Machine occurred over a seven month period, and employees of Samey and Hedinn spent weeks at a time in Minnesota working on the Machine.  Id. ¶¶ 41, 43.

Sometime thereafter, LEI identified a number of problems with the Machine.  These problems included the inability of the Machine to produce the promised 7,200 egg cartons per hour, the poor quality of the finished product, and individualized issues with specific Machine components, such as the Machine's rotor, robotic transfer system, dryer, and hot press.  Id. ¶¶ 47, 48.  On March 16, 2015, LEI and Emery entered into an "agreement in order to remedy faults

and design flaws that have emerged post installation of the Emery Silfurtun Quattro egg carton production line at LEI Packaging."  Compl. [Docket No. 1-1] Ex. B ("Modification Agreement").  The Icelandic Defendants are not parties to the Modification Agreement.

LEI asserts third-party beneficiary claims against the Icelandic Defendants for breaching their contracts with Emery.  LEI also asserts direct implied warranty claims against the Icelandic Defendants.  None of LEI's claims against the Icelandic Defendants arise from the Machine Agreement.

**B.  Procedural History**

On May 11, 2015, Emery removed the original Complaint from Minnesota state court to federal court under diversity jurisdiction, 28 U.S.C. § 1332.  On July 17, 2015, the Icelandic Defendants filed a Motion to Dismiss [Docket No. 18], which was later withdrawn after LEI filed an Amended Complaint [Docket No. 30].  On August 21, 2015, LEI and Emery stipulated [Docket No. 32] to arbitrate their claims and to stay the litigation between themselves.  That same day, the Icelandic Defendants renewed their Motion to Dismiss [Docket No. 34].  On September 3, 2015, LEI filed a Motion to Compel the Icelandic Defendants to Arbitrate [Docket No. 41].  The Icelandic Defendants' Motion to Dismiss and LEI's Motion to Compel were both heard before the undersigned on October 15, 2015, and an Order [Docket No. 56] denying the two motions was entered on December 22, 2015.  On February, 23, 2016, LEI filed its Second Amended Complaint, the operative complaint in this action.

The Icelandic Defendants again move to dismiss, arguing that the Second Amended Complaint is deficient for three reasons:  1) lack of personal jurisdiction, 2) failure to state plausible third-party beneficiary and implied warranty claims, and 3) improper venue.

## III.  DISCUSSION

### A.  Personal Jurisdiction

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(1).  To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant.  Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd., 89 F.3d 519, 522 (8th Cir. 1996).  For the purposes of a prima facie showing, the evidence is viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in the plaintiff's favor.  Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991).

Determining whether personal jurisdiction exists is a two-prong inquiry:  first, the requirements of the Minnesota long-arm statute must be satisfied, and second, the exercise of personal jurisdiction must comport with due process.  Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003).  Because Minnesota's long-arm statute is "coextensive with the limits of due process," the only question is whether the exercise of personal jurisdiction comports with due process.  Minn. Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).

A court properly exercises personal jurisdiction over a nonresident defendant when the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).  Sufficient contacts exist when "the defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). A finding of reasonable anticipation requires that there be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

A court may use one of two different analyses to conclude whether the defendants' contacts with the forum state confer personal jurisdiction. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). General jurisdiction cases analyze whether a defendant's contacts with the state are so "continuous and systematic" that the defendant becomes subject to the jurisdiction of that state's courts for any purpose. Morris v. Barkbuster, Inc., 923 F.2d 1277, 1281 (8th Cir. 1991) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984)). Specific jurisdiction, the second method of analysis, is viable only if the injury giving rise to the action occurred within or had some connection to the forum state. Id. at 414; see also Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994) (identifying and discussing general and specific personal jurisdiction).

The Eighth Circuit applies a five factor test in analyzing the constitutional requirements needed for personal jurisdiction. See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1435 (8th Cir. 1995); see also Rostad v. On-Deck, Inc., 372 N.W.2d 717, 719 (Minn. 1985). Three interrelated factors are considered to be of primary importance: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; and (3) the relation of the cause of action to these contacts. See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

The third factor—the relationship of the cause of action to these contacts—distinguishes between specific and general jurisdiction.  There are two secondary factors:  (1) the interest of the forum state in providing a forum for its residents; and (2) the convenience of the parties.  See id.

The Icelandic Defendants argue that personal jurisdiction is lacking for three reasons.  First, the Icelandic Defendants argue that LEI is improperly using its contacts with Emery in Minnesota to assert jurisdiction over the Icelandic Defendants.  Second, the Icelandic Defendants argue that they had no contact with Minnesota when LEI and Emery executed the Modification Agreement.  Finally, they argue that each of the five jurisdictional factors identified above resolves in favor of no personal jurisdiction over them.

Contrary to the Icelandic Defendants assertion, LEI is not merely relying on its Minnesota contacts with Emery to assert personal jurisdiction over the Icelandic Defendants.  The Second Amended Complaint alleges that the agreements between the Icelandic Defendants and Emery explicitly state that work was being performed for LEI in Minnesota, as is acknowledged in the contracts Samey and Hedinn signed with Emery.  Second Am. Compl. ¶ 23; Icelandic Contracts § 1.0.  LEI further alleges that an agent of Samey traveled to Minnesota to meet with LEI about the Machine prior to its installation, and that both Samey and Hedinn had agents and representatives travel to and spend considerable time in Minnesota to install and perform maintenance on the Machine.  Second Am. Compl. ¶¶ 39, 43.  Rather than merely bootstrapping on LEI's Minnesota contacts with Emery to assert personal jurisdiction over the Icelandic Defendants, the Second Amended Complaint includes several allegations of Minnesota contact by the Icelandic Defendants independent of Emery.

The second effort to defeat personal jurisdiction is also unpersuasive.  The Icelandic

Defendants attempt to shift the focus of the jurisdictional inquiry to a later time period, when

LEI and Emery executed the Modification Agreement.  However, the Modification Agreement

does not invalidate or render irrelevant the Icelandic Defendants' contacts with Minnesota that

occurred prior to March 16, 2015, the date the Modification Agreement was signed.  As LEI

makes clear in its responsive brief, it is asserting third-party beneficiary rights under the

Icelandic Contracts for breaches that occurred prior to the Modification Agreement.  Therefore,

ignoring the events and contacts that the Icelandic Defendants had with Minnesota prior to the

Modification Agreement date is improper.

Despite their contacts with Minnesota, the Icelandic Defendants remain steadfast that the

five jurisdictional factors weigh against finding jurisdiction here.  According to the Icelandic

Defendants, because the Icelandic Contracts did not contemplate that work would be performed

outside of Iceland, and because the aforementioned visits to Minnesota were not required by the

Icelandic Contracts, jurisdiction is lacking.  The first assertion, however, ignores the Icelandic

Contracts' introductions, which state the "[f]ollowing is a contract for the construction of a pulp

molding system" and that "[t]he system is for the 'LEI Packaging L. L. C.', factory in

Minnesota, USA."  Hedinn Contract § 1.0; Samey Contract § 1.0.

The Icelandic Defendants' employee visits to Minnesota identified in the Second

Amended Complaint were made for the explicit purpose of furthering the Icelandic Defendants'

contractual obligations.  Although the Icelandic Contracts do not state that employees were

required to travel to Minnesota, it is undisputed that employees of the Icelandic Defendants were

present in Minnesota to perform work on the Machine.  That physical connection to Minnesota

distinguishes this case from those relied upon by the Icelandic Defendants.  See Lucachick v.

NDS Americas, Inc., 169 F. Supp. 2d 1103, 1107 (D. Minn. 2001) (noting that plaintiff's "residence was the only connection" to the forum state and that the plaintiff's residence was "a personal choice," and that the job description in the contract at issue required the plaintiff to report to and create business contacts with companies outside of the forum state); Mountaire Feeds, Inc. v. Agro Impex, S. A., 677 F.2d 651, 655-56 (8th Cir. 1982) (holding that personal jurisdiction was lacking because no "sales representative or other employee ever entered [the forum state] in connection with the sales contracts at issue. Nor did any Agro Impex personnel supervise Mountaire's performance in [the forum state]."); Austad Co. v. Pennie & Edmonds, 823 F.2d 223 (8th Cir. 1987) (finding "three day visit" to forum state insufficient to confer personal jurisdiction where the actions giving rise to the lawsuit occurred outside the forum state).

The Icelandic Defendants claim that travels to Minnesota by their agents and representatives cannot confer jurisdiction because the cause of action did not arise out of those visits. However, the Second Amended Complaint alleges that the Minnesota visits by representatives of the Icelandic Defendants were to perform key roles in installing the Machine at LEI's Minnesota facility. For example, Samey engineer Kristjan Ármannsson is alleged to have been designated as the "Project Manager" and to have traveled to Minnesota to meet with LEI about the Machine. Second Am. Compl. ¶ 39. Similarly, Hedinn employee Gunnlauger Skulason spent significant time in Minnesota assisting in the Machine's installation. The first three primary factors for personal jurisdiction are met.

The two secondary factors—the interest of the forum state in providing a forum for its residents and the convenience of the parties—also do not warrant dismissal for lack of

jurisdiction.  The Machine was installed in Minnesota, was to be operated in Minnesota, and representatives for the Icelandic Defendants spent considerable time in Minnesota working on the Machine.  Minnesota has an interest in providing a forum for LEI to litigate its claims. Finally, LEI selected Emery, a Canadian company, to build and install the Machine.  The record does not reflect that LEI had any involvement in bringing the Icelandic Defendants on board or that any representative of LEI traveled to Iceland in connection with construction and installation of the Machine.  The inconvenience of the Icelandic Defendants in litigating here is much less than the inconvenience of LEI having to litigate in Iceland.  This Court has personal jurisdiction over the Icelandic Defendants.

**B.  Venue**

The Icelandic Defendants argue that Minnesota is an improper venue to adjudicate LEI's third-party beneficiary and implied warranty claims.  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2). Suitable venue is not limited to the "best" forum to adjudicate the claim; the question is whether the district the plaintiff chose has a substantial connection to the claim.  Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003).

For the same reasons this Court has personal jurisdiction over the Icelandic Defendants, Minnesota is a proper venue to hear this dispute.  The connection to Minnesota is sufficiently strong to ensure that Defendants are not being "haled into a remote district, having no real relationship to the dispute."  Richards v. Aramark Servs., Inc., 108 F.3d 925, 928 (8th Cir. 1995).

## C.  Motion to Dismiss Standard

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879–80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.

Working in combination with Rule 8, Rule 12 requires the plaintiff's factual allegations to "raise a right to relief above the speculative level," and push claims "across the line from conceivable to plausible."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  In other words, the complaint must establish more than a "sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"  Id. (quoting Fed. R. Civ. P. 8(a)(2)).[1]

---

[1] The Icelandic Defendants take issue with LEI pleading "upon information and belief," arguing that the allegations in the Second Amended Complaint lack the requisite factual support to withstand a Rule 12(b)(6) challenge.  This argument is unpersuasive; the Second Amended

### 1.  Third-Party Beneficiary Claims

The Icelandic Defendants argue that LEI's third-party beneficiary claims fail to state a claim because the Second Amended Complaint does not identify a specific clause of the Icelandic Contracts that either Icelandic Defendant breached.  The Icelandic Defendants also argue that LEI does not have rights under either of the Icelandic Contracts because neither contract expresses any intention to benefit LEI through the Icelandic Defendants' performance.  LEI responds that the Second Amended Complaint does sufficiently identify specific provisions of the Icelandic Contracts that Samey and Hedinn allegedly breached.  LEI also argues that it has fulfilled the "intent to benefit" test required to pursue its third-party beneficiary claims against the Icelandic Defendants.

The Icelandic Defendants' first argument lacks merit; LEI has sufficiently alleged that the Icelandic Defendants breached their respective contracts with Emery.  With respect to Samey, the Samey contract states that Samey is responsible for the electrical and automation parts of the Machine, "including a robot function and control systems."  Samey Contract § 1.0.  The Second Amended Complaint generally alleges that the Machine was designed, manufactured, and installed improperly, and specifically alleges multiple problems with the Machine's robotics transfer system.  Second Am. Compl. ¶ 48.  As to Hedinn, its contract states that Hedinn is "responsible for [the] building of the steel constructions" as well as providing "all steel material for the construction" of the Machine.  Hedinn Contract § 1.0.  The Second Amended Complaint generally alleges manufacturing defects and specifically alleges that

Complaint is supported by sufficient factual allegations that make dismissal upon this ground inappropriate.

Hedinn was responsible for manufacturing and installing "the stock and water handling system, the rotor, the dryer, [and] the hot press system," all of which LEI claims failed to function properly.  Second Am. Compl. ¶¶ 38, 48.[2]

Turning next to LEI's purported rights under the Icelandic Contracts, LEI argues that it has sufficiently pled third-party beneficiary claims because the overall intention of the Icelandic Contracts was to benefit LEI.  Although one who is not a party to a contract generally has no rights under the contract, "a third party may enforce a promise made for his benefit even though he is a stranger both to the contract and the consideration."  Caldas v. Affordable Granite & Stone, Inc., 820 N.W.2d 826, 832 (Minn. 2012).  Minnesota law recognizes a distinction between a third-party who is an intended versus an incidental beneficiary; intended beneficiaries have enforceable rights, incidental beneficiaries do not.  Id. at 833.  A third party to a contract can recover as an intended beneficiary if recognition of those rights is appropriate and the third party meets the "duty owed" test or the "intent to benefit" test.  Cretex Cos., Inc. v. Constr. Leaders, Inc., 342 N.W.2d 135, 139 (Minn. 1984).[3]  Under the intent to benefit test, "the circumstances must indicate that the promisee . . . intends to give the beneficiary . . . the benefit of the promise."  Hickman v. SAFECO Ins. Co. of Am., 695 N.W.2d 365, 370 (Minn. 2005)

---

[2] The Icelandic Defendants take issue with LEI not identifying by section which provisions of the Icelandic Contracts were allegedly breached.  At the hearing, LEI explained that its silence with respect to specific contract provisions was the result of Emery not giving LEI permission to include the contracts in this lawsuit.  LEI also stated that this requirement of confidentiality of the contracts is also why the Icelandic Contracts were not attached to the operative pleading.

[3] The Icelandic Defendants state that they do not concede Minnesota law applies to LEI's third-party beneficiary claims.  While the Icelandic Defendants' stance on this issue is noted, they cite Minnesota law to advance their arguments and neglect to identify which other forum's laws should apply to this dispute.  At this stage, Minnesota law will be applied.

(citing Restatement (Second) of Contracts § 302(1)(b)).  To assess the parties' intent, "the contract is read in light of all the surrounding circumstances."  Id.  Generally, "objective manifestation" of intent to benefit a third party is required.  Id. at n.7.

In Hickman, a mortgagee was an intended third-party beneficiary to an insurance contract between the mortgagor and the insurance company.  695 N.W.2d at 366–67.  While not explicitly named in the insurance contract, the mortgagee was recognized as a "borrower" under the contract's terms and, importantly, the contract both dictated that certain sums were to be paid to the borrower and that the borrower had a right to seek arbitration if the borrower disagreed with the amount of loss determination.  Id. at 370–71.  In contrast, shareholder employees were held not to be incidental third-party beneficiaries to a contract between a company and an appraisal firm.  Avrig Enters., Inc. v. Sansome Street Appraisers, Inc., No. 12-2510, 2013 WL 5728161, at *4 (D. Minn. Oct. 22, 2013).  In that case, the appraisal firm agreed to provide annual valuations of the company to allow departing employees to cash out their stock.  Id. at *1.  Because the contract expressed no intention that the employees were third-party beneficiaries, even though the company valuations directly impacted the value of the employees' stock cash pay outs, they were not intended beneficiaries to the contract between the company and the appraisal firm.  See also Wurm v. John Deere Leasing Co., 405 N.W.2d 484, 486–87 (Minn. Ct. App. 1987) (holding that brothers to the signatory of a contract were not intended beneficiaries because they were not "mentioned in the contract").

As the Eighth Circuit has recognized, "[i]n many (perhaps most) construction contract situations, the project owner will not be an express third-party beneficiary who may directly enforce warranties made by subcontractors or suppliers to the general contract."  AgGrow Oils,

L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburge, PA, 420 F.3d 751, 756 (8th Cir. 2005) (citing

Restatement (Second) of Contracts § 302 cmt. e, illus. 19).  However, exceptions exist to this

general rule.  For example, in AgGrow Oils, the owner of an oilseed processing plant was

permitted to enforce contractual production guarantees between the plant's contractor and

supplier of seed processing equipment.  Id.  In that case, the subcontractor's direct dealings with

the owner prior to the contractor's involvement, a flow chart that showed the subcontractor

played an "integral" role in the entire process, and the express recognition of the owner of the

project, trumped the general rule that "[i]n many (perhaps most) construction contract situations,

the project owner will not be an express third-party beneficiary who may directly enforce

warranties made by subcontractors or supplier to the general contractor."  Id.

Like the contract at issue in AgGrow Oils, this is not a typical construction contract.

Language in the Icelandic Contracts and the surrounding circumstances make it legally plausible

that LEI was an intended third-party beneficiary under the Icelandic Contract.  The Icelandic

Contracts begin by stating "[t]he following is a contract for the construction of a pulp molding

system," and ends with "[t]he system is for the 'LEI Packaging L. L. C.', factory in Minnesota,

USA."  Icelandic Contracts § 1.0.  It is significant that the contracts unambiguously state that the

Icelandic Defendants are contracting to build a pulp molding system—the Machine—for LEI.

Like in Hickman, the contracts recognize LEI and, unlike in Wurm, there is no uncertainty as to

who will be receiving the ultimate benefit.  Also relevant is Section 1.1, titled "Project overview

and scope," which displays a schedule of which entity—Samey, Hedinn, or Emery—will

perform certain construction steps and when each step is expected to begin and end.  Id. § 1.1.

This is important because, like in AgGrow Oils, the schedule demonstrates that the Icelandic

Defendants were "integral to . . . the entire process."  420 F.2d at 756.  In addition, Samey

employee Kristjan Ármannsson was named the "Project Manager," attended meetings with LEI

in Minnesota and drafted, distributed, and regularly updated a "Project Plan[n]er," which set

"forth the tasks and responsibilities of Emery, Samey, and Hedinn for performance and

execution of the Machine Agreement for LEI in Minnesota."  Second Am. Compl. ¶ 39.  Both

Samey and Hedinn representatives traveled to Minnesota, and spent considerable time working

on the Machine at LEI's facility in Minnesota, presumably in accordance with the schedule

created by Ármannsson.  The "surrounding circumstances" further support the conclusion that

LEI is an intended beneficiary of the Icelandic Contracts.  Hickman, 695 N.W.2d at 370.

### 2.  Warranty Claims

#### a.  Implied Warranty of Merchantability

LEI also asserts implied warranty of merchantability claims against both Icelandic

Defendants.  The Icelandic Defendants argue that these claims must be dismissed because LEI

has failed to plead facts showing that defective components were manufactured by either Samey

or Hedinn.  The Icelandic Defendants additionally argue that the Icelandic Contracts disclaim all

warranties other than the limited warranty for specific supplied components.  Relatedly, the

Icelandic Defendants contend that United States implied warranty laws do not apply to them.

Plaintiffs pursuing claims arising from defective products must specifically allege that

the purported defect has manifested itself.  O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir.

2009).  Here, the Second Amended Complaint sufficiently alleges that particular Machine

components were defectively manufactured, supplied, or installed by the Icelandic Defendants.

The Second Amended Complaint alleges that Samey assumed responsibility for the Machine's

"electrical controls . . . including but not limited to the HMI Application, the PLC Controls, and all other electrical communication systems," and that the HMI Computer application was defective.  Second Am. Compl. ¶¶ 37, 48.[4]  The Second Amended Complaint also alleges that Hedinn "designed, manufactured, and planned the installation of the stock and water handling system, the rotor, the dryer, [and] the hot press system," and that these items were designed, manufactured, or installed defectively.  Id. ¶¶ 38, 48.

The Icelandic Defendants' disclaimer argument is also unpersuasive.  Under Minnesota law, disclaiming the implied warranty of merchantability requires language that is conspicuous and unambiguous.  Minn. Stat. § 336.2-316(2).  "Strict" compliance is required to disclaim implied warranties.  McPeak v. Boker, 53 N.W.2d 130, 131 (Minn. 1952).  Representing that something is "in good physical-mechanical condition but not guaranteed in any way," for example, is not sufficiently unambiguous to disclaim the implied warranty of merchantability.  Id. at 133.

The "Warranty" section of the Icelandic Contracts provides:

The warranty period for system components is 12 months from date of delivery and covers parts and labor, during normal working hours, but does not extend to parts which, in the opinion of Samey ehf, FANUC Robotics Ltd. or other suppliers, have been subjected to misuse, neglect, accident, [or] improper applications.

Samey Contract § 5.[5]  This purported disclaimer does not use the word "merchantability," nor

_____

[4] The Samey Contract also provides that Samey is "responsible for electrical and automation parts, including a robot function and control systems," and the Second Amended Complaint alleges broad "[p]roblems with the Machine's robotic transfer system."  Samey Contract § 1.0; Second Am. Compl. ¶ 48.

[5] The Warranty section of the Hedinn Contract is substantially the same language.

does it indicate that all warranties are excluded by using an expression like "as is" or "with all faults." Minn. Stat. § 336.2-316(2)–3(a). Thus, the Warranty section insufficiently disclaims the implied warranty of merchantability. Similarly, Sections 1.6 and 1.7 of the Icelandic Contracts, which state that Samey or Hedinn "provides warranty of supplied components as per section #5" and "the CE conformity of the total pulp molding system is buyers responsibility," are not unambiguous statements disclaiming the implied warranty of merchantability. Therefore, the purported disclaimers also fall short of satisfying Minn. Stat. § 336.2-316(2).

The Icelandic Defendants further contend that Minnesota law does not apply to this dispute, because Minn. Stat. § 336.1-301 provides that the disclaimer requirements of § 336.2-316(2) only apply to "transactions bearing an appropriate relation to this state." The Icelandic Defendants argue that because the Icelandic Contracts are between foreign entities that were negotiated and signed in Iceland, the Icelandic Contracts do not have an appropriate relation to Minnesota to apply here.

Generally, a federal court sitting in diversity will apply the choice of law principles of the state in which it sits. Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074, 1077 (D. Minn. 1999). However, the UCC has its own choice of law provision, which provides that the law from the forum state should be applied if the transactions bear an "appropriate relation" to that state. UCC § 1-105; Minn. Stat. § 336.1-301. Courts interpreting this phrase have considered relevant "the residencies of the parties, the locations of the negotiations, the place of purchase of the goods, and the physical location of the goods at issue." MWL Brasil Rodas & Eixos LTDA v. K-IV Enters. LLC, 661 F. Supp. 2d 419, 427–28 (S.D.N.Y. 2009).

Although the Icelandic Contracts were negotiated and signed in Iceland and are between

Icelandic and Canadian companies, Minnesota law applies to LEI's warranty claims.

Significantly, the goods were ultimately located at LEI in Minnesota, which was expressly

contemplated in each of the Icelandic Contracts.  See Indus. Graphics, Inc. v. Asahi Corp., 485

F. Supp. 793, 800 n.8 (D. Minn. 1980) (applying Minnesota law to sales dispute involving

Japanese supplier in part because the goods were shipped to Minnesota and the Japanese

company "was at least aware" that the goods were destined for Minnesota).  Because the

Icelandic Contracts explicitly state that the "system is for the 'LEI Packaging L. L. C.', factory

in Minnesota, USA," the Icelandic Defendants cannot credibly claim that Minnesota is a foreign

jurisdiction completely disconnected from the contracts underlying this dispute.

### b.  Implied Warranty of Fitness for a Particular Purpose

The Icelandic Defendants also argue that LEI's implied warranty of fitness for a

particular purpose claims must be dismissed.  According to the Icelandic Defendants, these

claims are deficient because the Second Amended Complaint does not allege facts demonstrating

that LEI was using the provided goods for a particular purpose.

Under Minnesota law,

> Where the seller at the time of contracting has reason to know any particular
> purpose for which the goods are required and that the buyer is relying on the
> seller's skill or judgment to select or furnish suitable goods, there is unless
> excluded or modified under the next section an implied warranty that the goods
> shall be fit for such purpose.

Minn. Stat. § 336.2-315.  Breach of this warranty requires proof that "(1) the seller had reason to

know of the buyer's particular purpose; (2) the seller had reason to know that the buyer was

relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer's actual

reliance."  Driscoll v. Standard Hardware, Inc., 785 N.W.2d 805, 817 (Minn. Ct. App. 2010).

The Second Amended Complaint alleges that both Samey and Hedinn "had reason to know and did know of LEI's particular purpose" for the Machine.  Second Am. Compl. ¶¶ 69, 85.  The Icelandic Contracts specify that "[t]he system is for the 'LEI Packaging L. L. C.', factory in Minnesota, USA and is a Emery Quattro Type A machine, with wet press, robot transfer, six unit dryer, pulp unit, vacuum unit, five station hot press and product stackers." Icelandic Contracts § 1.0.  The comments to Minn. Stat. § 336.2-315 state that "[a] 'particular purpose'. . . envisages a specific use by the buyer which is peculiar to the nature of his business." Minn. Stat. § 336.2-315 cmt. 2.  LEI's implied warranty of fitness for a particular purpose claims remain viable.

### c.  The Samey Contract

Samey argues that because its contract is predominately for the sale of services rather than goods, LEI's implied warranty claims against Samey must be dismissed.  See Russo v. NCS Pearson, Inc., 462 F. Supp. 2d 981, 997 (D. Minn. 2006) (noting that implied warranty claims only apply to the sale of goods).  In assessing whether a contract is for the sale of goods or services, Minnesota courts use the "predominant purpose" test, which focuses on whether the predominant factor, thrust, and purpose "is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)."  Id. (quoting AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083, 1085 (8th Cir. 1998)).

Samey's argument that its contract is primarily for the sale of services rather than goods overlooks the first sentence in the contract's introduction:  "Following is a contract for the construction of a pulp molding system."  Samey Contract § 1.0.  While Samey correctly asserts

that the contract also contemplates providing engineering, electrician, and assembly services, the predominant purpose of the contract is constructing the Machine. Therefore, LEI's breach of implied warranty claims against Samey will remain in suit.

### D. Joint and Several Liability

Finally, the Icelandic Defendants argue that Samey and Hedinn cannot be held jointly and severally liable to LEI. The Icelandic Defendants argue that Federal Rule of Civil Procedure 12(f) permits striking LEI's improper request for joint and several liability.

"In Minnesota, joint-and-several liability for damages in contract actions applies only where two persons independently and unintentionally breach separate contracts, closely related in point of time, to the same person, and it is not reasonably possible to make a division of the damages caused by the separate breaches." Duluth Superior Erection, Inc. v. Concrete Restorers, Inc., 665 N.W.2d 528, 538 (Minn. Ct. App. 2003).

The Icelandic Contracts obligated the Icelandic Defendants to perform specific tasks essential to the Machine's construction and installation. LEI claims that both Icelandic Defendants breached their contract with Emery and, as a result, LEI received a defectively constructed and installed Machine. The alleged contract breaches were independent of each other, took place at roughly the same time—when the Machine was constructed and installed—and were to the same entity, Emery. The Second Amended Complaint does allege that Samey and Hedinn each had discrete areas of responsibility, but it also alleges that the Icelandic Defendants worked in tandem at LEI's facility in Minnesota for significant periods of time. Second Am. Compl. ¶¶ 35, 40, 41, 43. Under these alleged facts and at this stage of the proceedings, LEI's claim for joint and several liability remains as well.

20

**IV.  CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS**

**HEREBY ORDERED** that Defendants Samey ehf and Hedinn Ltd.'s Motion to Dismiss

[Docket No. 79], is **DENIED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 16, 2016.

21