UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

LEI Packaging, LLC,

        Plaintiff,

   v.

Emery Silfurtun Inc., Samey ehf, and
Hedinn Ltd.,

        Defendants.

MEMORANDUM OPINION
AND ORDER
Civil No. 15-2446 ADM/BRT

_____

Sarah A. Horstmann, Esq., Maslon LLP, Minneapolis, MN, on behalf of Plaintiff.

Matthew A. Lee, Esq., Quinn Emanuel Urquhart & Sullivan, New York, NY, and Randi J. Winter, Esq., Felhaber Larson, Minneapolis, MN, on behalf of Defendant Hedinn Ltd.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on the damages claim of Plaintiff LEI Packaging, LLC ("LEI") after being granted Default Judgment against Defendant Samey ehf ("Samey") [Docket No. 135]. Defendant Hedinn Ltd. ("Hedinn"), who is still actively defending in this case, filed a Response [Docket No. 147]. For the reasons stated below, LEI's request for damages as to Samey is denied as premature.

## II. BACKGROUND

**A. Parties, the Machine, and the Machine Agreement**

This dispute concerns contracts for the purchase of a Rotary Quattro TO Pulp Moulding Machine (the "Machine"), which was designed to be capable of producing 7,200 egg cartons per hour. On January 22, 2014, LEI, a Minnesota manufacturer and seller of molded pulp packaging products, including egg cartons and trays, agreed to pay Emery Silfurtun Inc. ("Emery")

$4,509,858 to design, construct, and install the Machine.  Second Am. Compl. [Docket No. 66] ¶¶ 1, 7, Ex. A ("Machine Agreement").  Emery, a Canadian company, and LEI are the only signatories to the Machine Agreement.

Emery in turn contracted with Samey and Hedinn (collectively, the "Icelandic Defendants") to assist in fulfilling its obligations under the Machine Agreement.  Id. ¶¶ 19, 27; Lee Decl. [Docket No. 82] Ex. 1 § 1.0, Ex. 2 § 1.0 (collectively, the "Icelandic Contracts").  The Second Amended Complaint alleges that Samey agreed to provide project management and testing services, assume responsibility over the Machine's electrical and automation parts, and source and order several major Machine components.  Second Am. Compl. ¶ 21.  Hedinn's role was to build steel constructions and to provide steel materials for the Machine's construction. Id. ¶ 29.

Machine design and manufacture started in January 2014, and installation began in September 2014.  Id. ¶¶ 35, 40.  The Icelandic Defendants spent considerable time in Minnesota working on the Machine.  Id. ¶¶ 41, 43.

Sometime thereafter, LEI identified a number of problems with the Machine.  These problems included the inability of the Machine to produce the promised 7,200 egg cartons per hour, the poor quality of the finished product, and individualized issues with specific Machine components, such as the Machine's rotor, robotic transfer system, dryer, and hot press.  Id. ¶¶ 47, 48.  On March 16, 2015, LEI and Emery entered into an "agreement in order to remedy faults and design flaws that have emerged post installation of the Emery Silfurtun Quattro egg carton production line at LEI Packaging."  Compl. [Docket No. 1-1] Ex. B ("Modification Agreement").  The Icelandic Defendants are not parties to the Modification Agreement.

**B. Procedural History**

On May 11, 2015, citing diversity jurisdiction, Emery removed the original Complaint from Minnesota state court to federal court. 28 U.S.C. § 1332. On July 17, 2015, the Icelandic Defendants filed a Motion to Dismiss [Docket No. 18], which was later withdrawn after LEI filed an Amended Complaint [Docket No. 30]. On August 21, 2015, LEI and Emery stipulated [Docket No. 32] to arbitrate their claims and to stay the litigation between themselves. That same day, the Icelandic Defendants renewed their Motion to Dismiss [Docket No. 34]. On September 3, 2015, LEI filed a Motion to Compel the Icelandic Defendants to Arbitrate [Docket No. 41]. The Icelandic Defendants' Motion to Dismiss and LEI's Motion to Compel were both denied by Order [Docket No. 56] dated December 22, 2015. On February, 23, 2016, LEI filed its Second Amended Complaint, the operative complaint in this action.

On March 15, 2016, the Icelandic Defendants again moved to dismiss [Docket No. 79], arguing that the Second Amended Complaint suffered from jurisdictional and venue defects, while also not stating plausible third-party beneficiary and implied warranty claims. That motion was denied on August 16, 2016. See Order [Docket No. 105].

Shortly thereafter, counsel for Samey moved to withdraw [Docket No. 113] and Samey stopped defending this case. On September 15, 2016, LEI Applied for Entry of Default [Docket No. 119] against Samey, which was granted by the clerk of court on September 26, 2016. See Entry Default [Docket No. 122]. On October 5, 2016, LEI moved for Default Judgment as to Samey [Docket No. 127]. The Motion was granted, and LEI was ordered to submit evidence to substantiate its damages claims against Samey. See Order [Docket No. 135].

LEI submitted its damages memorandum on January 18, 2017. See Mem. [Docket No.

144]. Hedinn, who remains active in this case, submitted a response on February 8, 2017. After an exchange of Letters [Docket Nos. 151, 152] to address concerns raised in the memorandum and response, this issue can now be adjudicated.

### III.  DISCUSSION

LEI pleads that the Icelandic Defendants are jointly and severally liable for damages sustained by the Machine's failures.  In its memorandum supporting its damages claim, with the exception of "repairs, replacement parts, and reprogramming directly attributable to Samey," LEI contends that it "reserves the right to seek joint and several liability against all Defendants up to 100%" of the damages.  Hedinn argues that LEI is asking for a damages judgment against defaulting defendant Samey that it will later try to recover from non-defaulting defendants Hedinn and Emery, even though there has been no finding of liability or attribution of fault caused by a non-defaulting defendant.  Hedinn argues that it is premature to enter a default judgment against Samey for any category of damages where LEI reserves its right to seek joint and several liability against the non-defaulting defendants, and urges that LEI's request be stayed pending final adjudication as to the remaining defendants.

Guidance on this issue comes from the venerable case of Frow v. De La Vega, 82 U.S. (15 Wall.) 552 (1872).  In Frow, the plaintiff sought determination of title to certain real property, alleging that defendants had engaged in a conspiracy to defraud him of the land through a forged power of attorney.  One of the fourteen defendants failed to plead, and a default judgment was therefore entered against him.  The other defendants proceeded to trial and prevailed against the Plaintiff.  On appeal, the Supreme Court reversed the default judgment, observing:

> If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

Id. at 554. Subsequent interpretations have narrowed this holding, agreeing that it prohibits entry of a default judgment

> against one of several defendants (1) where the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or (2) where the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant.

6 J. Moore, et al., Moore's Federal Practice ¶ 55.06 at 55–39 (2d ed. 1991). Recognizing that liability may be joint and several, "courts have consistently held that it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments." Friedman v. Lawrence, No. 90-5584, 1991 WL 206308, at *3 (S.D.N.Y. Oct. 2, 1991).

In Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 433 (8th Cir. 1992), the Eighth Circuit advised that "[w]hen there are multiple defendants who may be jointly and severally liability for damages alleged by plaintiff, and some but less than all of those defendants default, the better practice is for the district court to stay its determination of damages against the defaulters until plaintiff's claim against the nondefaulters is resolved." The underlying rationale is "to avoid inconsistent judgments when co-defendants are similarly situated." Angelo Iafrate Constr., LLC v. Potashnick Constr. Inc., 370 F.3d 715, 722 (8th Cir.

2004).

LEI asserts that the Icelandic Defendants and Emery are jointly and severally liable for the myriad of the Machine's failures, and the allegations in the Second Amended Complaint reflect that the Icelandic Defendants' roles in designing and constructing the Machine were not completely independent. One of Samey's core responsibilities, for example, was project management, and it shared responsibility with Hedinn for "Packing machinery." Second Am. Compl. ¶¶ 24, 32; Johnson Decl. [Docket No. 45] Ex. E. And, although each Icelandic Defendant was responsible for manufacturing certain components of the $4.5 million Machine, memorialized in the separate Icelandic Contracts, those components were expected to work together to produce the promised 7,200 egg trays or cartons per hour. This demonstrates a significant amount of overlap, but not congruity, between the Icelandic Defendants in designing, manufacturing, and installing the Machine. As such, there is no risk of entirely inconsistent judgments of liability; if Hedinn is later absolved from blame for performing its contractual obligations, Samey's liability could remain. See In re Uranium Antitrust Litig., 617 F.2d 1248, 1257–58 (7th Cir. 1980) (finding that Frow's holding does not preclude entry of default judgment against more than one but less that all defendants because there is little possibility of inconsistent adjudications of liability).

However, although differing liability determinations are permitted, two distinct determinations as to damages arising out of a single defective Machine must be avoided. If damage amounts are entered against Samey now, and LEI later prevails on the merits against Hedinn, damages would then have to be determined as to Hedinn, raising the real risk of inconsistent damage awards. The joint nature of LEI's claim related to the single Machine

means there can only be one amount of damage for lost production, lost prices, and the other categories of pecuniary harm that LEI is pursuing. As the Tenth Circuit has cautioned, "consistent damage awards on the same claim are essential among joint and several tortfeasors. Otherwise, plaintiffs armed with joint and several liability on a single claim could seek to execute on a larger damage award from a party against whom the court awarded a much smaller damage verdict." Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985). Therefore, determination of damages is premature until LEI's claim against Hedinn is resolved. This is "the better practice" and preserves judicial economy by eliminating the potential and real risk of an inconsistent result. Pfanenstiel Architects, 978 F.2d at 433.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff LEI Packaging, LLC's request for damages as to Samey ehf is **DENIED** as premature until Plaintiff's claims against Defendant Hedinn Ltd. are resolved.

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 22, 2017.